**E-FILED**
Friday, 09 September, 2005  09:29:59 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA  DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARSHA L. WILSON AND | ) | |
| BANK OF PONTIAC | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | CIVIL NO. |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## C O M P L A I N T

Now comes, UNITED STATES OF AMERICA, by and through its attorneys,

JAN PAUL MILLER, United States Attorney for the Central District of Illinois, and Assistant

United States Attorney Bradley W. Murphy, and for its cause of action alleges that:

1.    This is a civil action brought pursuant to 28 U.S.C. § 1345 to foreclose the

hereinafter described mortgage or other conveyance in the nature of a mortgage

(hereinafter called "mortgage") and to join the following persons as defendants:

MARSHA L. WILSON AND BANK OF PONTIAC

2.    Attached as Exhibit "A" is a copy of the Mortgage, Exhibit "B" is a copy of the

Promissory Note secured thereby, and Exhibit "C" is the Notice of Acceleration.

- 2 -

3. Information concerning mortgage:

    (A)  Nature of instrument:           Mortgage

    (B)  Date of mortgage:               July 16, 1997

    (C)  Names of mortgagors:          MARSHA L. WILSON

    (D)  Name of mortgagee:           United States of America, United States Department of Agriculture

    (E)  Date and place of recording:     July 17, 1997, recorded in Livingston County, Illinois

    (F)  Identification of recording:      Recorded as Doc. No. 493867

    (G)  Interest subject to the mortgage:  Fee Simple

    (H)  Amount of original indebtedness including subsequent advances made under the mortgage:  $70,340.00

    (I)  Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

        1.  Legal description of mortgaged premises:

        Lot 111 in First Addition to Westview Subdivision to Pontiac, Livingston County, Illinois, as per Plat recorded October 16, 1979 as Document Number 387228 in the Office of the Recorder of Deeds of Livingston County, Illinois.

        PIN No. 15-16-377-028

        2.  Common address or location of mortgaged premises:

        1305 Motorola Dr., Pontiac, IL 61764

    (J)  Statement as to defaults and amount now due:

        1. Date of Default is July 17, 2003.

        2. Payments which have become due under the secured note are in default and arrears in the total amount of $24,137.86.

- 3 -

3.  The total amount now due is $113,898.23 as of July 6, 2005, plus interest accrued thereafter, court costs, title costs and plaintiff's attorney fees. This amount due includes the total principal and interest due and payable, all outstanding advances and fees charged to the defendant(s) account and total subsidy received on the defendant(s) loans(s).

4.  The per diem interest accruing under the mortgage after default is $19.0692.

(K)  Name of present owner of the real estate:  MARSHA L. WILSON

(L)  Name or names of persons, in addition to such owners, but excluding any non-record claimants as defined in the Illinois Mortgage Foreclosure Law, Chapter 735 ILCS, Section 5/15-1210, who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

BANK OF PONTIAC by virtue of a mortgage recorded August 11, 1997.

Plaintiff's mortgage constitutes a valid, prior and paramount lien upon the indicated interest in the mortgaged real estate, which lien is prior and superior to the right, title, interest, claim or lien of all parties and non-record claimants whose interests in the mortgaged real estate are sought to be terminated.

(M)  Names of defendants claimed to be personally liable for deficiency, if any:

NA

(N)  Capacity in which plaintiff brings this foreclosure:  as the owner and legal holder of said note, mortgage and indebtedness.

(O)  Facts in support of shortened redemption period, if sought:
The fair market value of the mortgaged real estate is less than 90 percent of the amount of the judgment requested herein and mortgagee hereby waives any and all rights to a personal deficiency judgment against the defendants.

(P)  Facts in support of request for costs and expenses, if applicable:

Plaintiff has been required to incur title insurance or abstract costs and other expenses which should be added to the balance secured by said mortgage.

(Q)  Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and the identity of such receiver, if sought:  NA

(R)  Plaintiff does not offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations

- 4 -

secured by the mortgage without judicial sale.

(S)   Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: MARSHA L. WILSON

REQUEST FOR RELIEF

Plaintiff requests:

(i)   A judgment to foreclose such mortgage, ordering:

a.  That an accounting may be taken under the direction of the court of the amounts due and owing to the plaintiff;

b.  That the defendants be ordered to pay to the plaintiff before expiration of any redemption period (or if no redemption period, before a date fixed by the court) whatever sums may appear to be due upon the taking of such account, together with fees and costs of the proceedings (to the extent provided in the mortgage or by law);

c.  That in default of such payment in accordance with the judgment, the mortgaged real estate be sold as directed by the court, to satisfy the amount due to the plaintiff as set forth in the judgment, together with the interest thereon at the statutory judgment rate from the date of judgment;

d.  That in the event the plaintiff is a purchaser of the mortgaged real estate at such sale, the plaintiff may offset against the purchase price of such real estate the amounts due under the judgment of foreclosure and order confirming the sale;

e.  That in the event of such sale and the failure of the person entitled thereto to redeem prior to such sale pursuant to this Article, the defendants made parties to the foreclosure in accordance with this Article, and all non-record claimants given notice of the foreclosure in accordance with this Article, and all persons claiming by, through or under them, and each and any and all of them, may be forever barred and foreclosed of any right, title, interest, claim, lien or right to redeem in and to the mortgaged real estate; and

f.  That if no redemption is made prior to such sale, a deed may be issued to the purchaser thereat according to law and such purchaser be let into possession of the mortgaged real estate in accordance with 735 ILCS, Section 5/15-1701, et. seq.

- 5 -

    ii)     An order granting a shortened redemption period, if authorized by law.

    iii)    A personal judgment for a deficiency, if authorized by law.

    iv)    An order granting possession.

    v)     An order placing the mortgagee in possession or appointing a receiver.

    vi)    A judgment for fees, costs and expenses.

    vii)   Enforcement of its assignment of rents derived from said real estate.

    viii)  Such other relief as equity may require, including, but not limited to, declaratory and injunctive relief.

## ADDITIONAL REQUEST FOR RELIEF

Plaintiff also requests that the judgment for foreclosure or other orders entered herein provide for the following (pursuant to 735 ILCS, Section 5/15-1506(f)):

    i)     Judicial sale conducted by the United States Marshal or his representative, at which the plaintiff is entitled to bid;

    ii)    Title in the real estate may be subject, at the sale, to exceptions including general real estate taxes for the current year and for the preceding year which have not become due and payable as of the date of entry of the judgment of foreclosure, any special assessments upon the real estate, and easements and restrictions of record;

- 6 -

iii)    In the event a party to the foreclosure is a successful bidder at the sale, such party shall be allowed to offset against the purchase price to be paid for such real estate amounts due such party under the judgment of foreclosure or order confirming the sale.

UNITED STATES OF AMERICA, Plaintiff

JAN PAUL MILLER
UNITED STATES ATTORNEY

s/:    BRADLEY W. MURPHY

Bradley Murphy
Assistant United States Attorney
One Technology Plaza
211 Fulton Street
Suite 400
Peoria, Illinois 61602
Tele: 309-671-7050
Fax No. 309-671-7259
brad.murphy@usdoj.gov

USDA
Form FmHA 1927-1 IL
(Rev. 8-96)

The form of this Mortgage was prepared by
the Office of the General Counsel, United
States Department of Agriculture and the
material in the blank spaces was inserted by
or under the direction of  BRIAN F. BEND
PO Box 30, Pontiac, IL 61764

RECEIVED
JUL 25 1997
STATE OFFICE
ILLINOIS
493367

LIVINGSTON COUNTY
DATE JUL 1 7 1997
TIME     9:45     A.M.
Pavel E Nozler
RECORDER

*Position 5*

# REAL ESTATE MORTGAGE FOR ILLINOIS

THIS MORTGAGE is made and entered into by     MARSHA WILSON, unmarried

residing in     Livingston     County, Illinois, whose post office address is

1305 Motorola Drive,   Pontiac     , Illinois.   61764     .

herein called "Borrower," and the United States of America, United States Department of Agriculture, herein called the "Government."
WHEREAS Borrower is indebted to the Government as evidenced by one or more promissory notes or assumption agreements, or
any shared appreciation agreement or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the
order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Bor-
rower, and is described as follows:

| *Date of Instrument* | *Principal Amount* | *Annual Rate of Interest* | *Due Date of Final Installment* |
|---|---|---|---|
| July 16, 1__ | $70,340.00 | 7.25% | July 16, 2035 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in the Government regulations or the note.)
An above evidences a loan to Borrower, and the Government, at any time, may assign the note pursuant to the Consolidated
Farm and Rural Development Act, or title V of the Housing Act of 1949 or any other statute administered by the Government;



FmHA 1927-1 IL (Rev. 8-96)

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument; this instrument shall secure payment of the note;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §§ 1472(g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby convey, mortgage, assign, and warrant unto the Government the following property situated in _____ **Livingston** _____ County or Counties, State of Illinois, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of Illinois, to wit:

Lot 111 in First Addition to Westview Subdivision to Pontiac, Livingston County, Illinois, as per Plat recorded October 16, 1979 as Document Number 387228 in the Office of the Recorder of Deeds of Livingston County, Illinois.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay the Government such fees and other charges as may now or hereafter be required by regulations of the Government.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) The Government may at any time pay any other amounts including advances for payment of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided by the Government regulations, neither the property nor any portion thereof or interest herein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument. Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will upon the Government's request, apply for and accept such loan in sufficient amount

to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future State laws prescribing any statute of limitations or limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws. Borrower hereby waives, to the fullest extent Borrower may lawfully do so under State law, the benefit of all State laws (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, or (c) allowing any right of redemption or possession following any foreclosure sale. Borrower also hereby relinquishes, waives and conveys all rights, inchoate or consummate, of descent, dower, courtesy, and homestead.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, age, handicap or familial status, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, age, handicap or familial status.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, prohibited by 7 C.F.R. part 1940, subpart G, Exhibit M.

(22)  This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(23)  Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until other address is designated in a notice so given, in the case of the Government at _____ _____, and in the case of Borrower at the address shown in the Finance Office records (which normally will be the same as the post office address shown above).

(24)  If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.



USDA, Rural Development
Illini Plaza, Suite 103
1817 South Neil Street
Champaign, IL 61820

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hands and seals this _____ 16th _____

day of _____ July _____, 19 _97_.

_____ (SEAL)
MARSHA WILSON

_____ (SEAL)

## ACKNOWLEDGMENT

ATE OF ILLINOIS

UNTY OF _____ Livingston _____ } ss:

I, _____ Frederick E. Strufe _____, a Notary Public, do hereby certify that

_____ MARSHA WILSON, unmarried _____ and _____

personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instrument as their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal this _____ 16th _____ day of _____ July _____, A.D., 19_97_.

(SEAL)

"OFFICIAL SEAL"
FREDERICK E. STRUFE
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 12/18/97

Frederick E. Strufe _____
Notary Public

My commission expires _____ 12/18/97 _____

_write the names of the mortgagers and the notary beneath their signatures._

Form RD 1940-16
(Rev. 10-96)

Form Approved
OMB No. 0575-0172

### UNITED STATES DEPARTMENT OF AGRICULTURE
### RURAL HOUSING SERVICE

# PROMISSORY NOTE

Type of Loan    RURAL HOUSING 502                     Loan No. 46-01

Date:    __JULY 16__ , __1997__

__1305 MOTOROLA DRIVE__
(Property Address)

__PONTIAC__ , __LIVINGSTON__ , __ILLINOIS__ 61764
(City or Town)         (County)         (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ __70,340.00__ (this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of __7.25__ %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

I.   Principal and interest payments shall be temporarily deferred. The interest accrued to _____, _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $_____, and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

II.   Payments shall not be deferred. I agree to pay principal and interest in __456__ installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the __16th__ day of each month beginning on __August 16__ , __1997__ and continuing for __456__ months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on __July 16__ , __2035__ I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ __455.00__ . I will make my monthly payment at __Rural Development__ __PO Box 80, Pontiac, Il. 61764__ or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

The reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to U.S. Department of Agriculture, Clearance Officer, STOP 7602, 1400 Independence Avenue, S.W., Washington, D.C 20250-7602. Please DO NOT RETURN this form to this address. Forward to the local USDA office only. You are not required to respond to this collection of information unless it displays a currently valid OMB control number.



Ex B

LATE CHARGES. If the Government has not received the full amount of any monthly payment by the end of 15 days after the date it is due, I will pay a late charge. The amount of the charge will be 4.0 percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once on each late payment.

BORROWER'S RIGHT TO PREPAY. I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

ASSIGNMENT OF NOTE. I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

CREDIT ELSEWHERE CERTIFICATION. I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

USE CERTIFICATION. I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

LEASE OR SALE OF PROPERTY. If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT. I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

SUBSIDY REPAYMENT AGREEMENT. I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

CREDIT SALE TO NONPROGRAM BORROWER. The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

DEFAULT. If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as describe in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

NOTICES. Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at _____ RURAL DEVELOPMENT, PO Box 80, Pontiac, IL 61764 _____, or at a different address if I am given a notice of that different address.

OBLIGATIONS OF PERSONS UNDER THIS NOTE. If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

WAIVERS. I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING: Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.**

_____ Seal          _____ Seal
Borrower   Marsha Wilson                        Borrower

_____ Seal          _____ Seal
Borrower                                          Borrower

        A Reamortization and/or Deferral Agreement dated ___ 8/16/99 ___
in the principal sum of $ _78,971.44_ , has been given to
modify the payment schedule of this note.

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ 70,340.00 | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | TOTAL | $    70,340.00 | |

U.S. Government Printing Office — 555-586

# REAMORTIZATION AGREEMENT



Account Number                                      Effective Date
   6725236                                         August 16, 1999

The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $      70340.00, plus interest on the unpaid principal of
  7.25000% per year, executed by MARSHA L WILSON _____ and
_____, (Borrower) dated      July 16, 1997
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $     78971.44.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  7.25000%
per annum at $      515.57 per month beginning September 16, 1999 and on
the 16th day of each succeeding month until the principal
and interest are paid, except that the final installment of the
entire debt, if not paid sooner, will be due and payable on
    July 16, 2035.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument)·as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

The funds shall be held by a federal agency, including Lender, or in an
institution whose deposits are insured by a federal agency,
instrumentality, or entity.  Lender shall apply funds to pay the Escrow
Items.  Lender may not charge Borrower for holding and applying the
Funds, annually analyzing the escrow account, or verifying the Escrow
Items, unless Lender pays Borrower interest on the Funds and applicable
law permits the Lender to make such charge.  However, Lender may require

borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of the funds, showing credits and debits to the funds and the purpose for which each debit to the Funds was made. The funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or assumption agreement or the instruments that secure them, remain unchanged.

Upon default in the payment of any one of the above installments or failure to comply with any of the conditions and agreements contained in the above-described note or assumption agreement or the instruments securing it, the Lender, at its option may declare the entire debt immediately due and payable and may take any other action authorized to remedy the default.

_____ Date 9-7-99
Borrower

_____ Date _____
Borrower

A Reamortization and/or Deferral Agreement dated __3/16/02__ in the principal sum of $ 86,641.14 , has been given to modify the payment schedule of this note.

## REAMORTIZATION AGREEMENT

Account Number
  6725236

Effective Date
  March 16, 2002



The United States of America, acting through the Rural Housing Service,
United States Department of Agriculture (Lender), is the owner and
holder of a promissory note or assumption agreement (Note) in the
principal sum of $    70340.00, plus interest on the unpaid principal of
  7.25000% per year, executed by MARSHA L WILSON               and
_____, (Borrower) dated     July 16, 1997
and payable to the order of the Lender.  The current outstanding balance
includes unpaid principal, accrued unpaid interest, unpaid advances and
fees.  The total outstanding balance is $    86641.14.

In consideration of the reamortization of the note or assumption
agreement and the promises contained in this agreement, the outstanding
balance is capitalized and is now principal to be repaid at  7.25000%
per annum at $    575.15 per month beginning     April 16, 2002 and on
the 16th day of each succeeding month until the principal
and interest are paid, except that the final installment of the
entire debt, if not paid sooner, will be due and payable on
    July 16, 2035.

If the outstanding loan balance prior to reamortization was reduced
by a payment which was later determined to be uncollectible, Rural
Housing Service will charge the account with an amount equal to the
uncollectible payments.  This amount is due and payable on the
effective date it is charged to the account and may accrue interest
at the promissory note rate.

Subject to applicable law or to a written waiver by Lender, Borrower
shall pay to lender on the day monthly payments are due under the Note,
until the Note is paid in full, a sum ("Funds") for : (a) yearly taxes
and assessments which may attain priority over Lender's mortgage or deed
of trust (Security Instrument) as a lien on the secured property
described in the Security Agreement (Property); (b) yearly leasehold
payments or ground rents on the Property, if any; (c) yearly hazard or
property insurance premiums; and (d) yearly flood insurance premiums, if
any.  These items are called "Escrow Items."  Lender may, at any time,
collect and hold funds in an amount not to exceed the maximum amount a
lender for a federally related mortgage loan, may require for Borrower's
escrow account under the federal Real Estate Settlement Procedures Act
of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq.
("RESPA"), unless another law or federal regulation that applies to the
funds sets a lesser amount.  If so, Lender may, at any time, collect and
hold funds in an amount not to exceed the lesser amount.  Lender may
estimate the amount of Funds due on the basis of current data and
reasonable estimates of expenditures of future Escrow Items or otherwise
in accordance with applicable law.

The funds shall be held by a federal agency, including Lender, or in an
institution whose deposits are insured by a federal agency,
instrumentality, or entity.  Lender shall apply funds to pay the Escrow
Items.  Lender may not charge Borrower for holding and applying the
Funds, annually analyzing the escrow account, or verifying the Escrow
Items, unless Lender pays Borrower interest on the Funds and applicable
law permits the Lender to make such charge.  However, Lender may require
borrower to pay a one-time charge for an independent real estate tax
reporting service used by Lender in connection with this loan, unless
applicable law provides otherwise.  Unless an agreement is made or
applicable law requires interest to be paid, Lender shall not be
required to pay Borrower any interest or earnings on the funds.
Borrower and Lender may agree in writing, however, that interest shall
be paid on the funds.

Lender shall give to borrower, without charge, an annual accounting of
the funds, showing credits and debits to the funds and the purpose for
which each debit to the Funds was made.  The funds are pledged as
additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by
applicable law, Lender shall account to Borrower for the excess Funds in
accordance with the requirements of applicable law.  If the amount of
the Funds held by Lender at any time is not sufficient to pay the Escrow
Items when due, Lender may notify Borrower in writing, and, in such case
Borrower shall pay to Lender the amount necessary to make up the
deficiency.  Borrower shall make up the deficiency in no more than
twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument,
Lender shall promptly refund to Borrower any Funds held by Lender.  If
Lender shall acquire or sell the Property, Lender, prior to the
acquisition or sale of the Property, shall apply any Funds held by
Lender at the time of acquisition or sale as a credit against the sums
secured by this Security Instrument.

Unless changed by this agreement, all of the terms of the note or
assumption agreement or the instruments that secure them, remain
unchanged.

Upon default in the payment of any one of the above installments or
failure to comply with any of the conditions and agreements contained in
the above-described note or assumption agreement or the instruments
securing it, the Lender, at its option may declare the entire debt
immediately due and payable and may take any other action authorized to
remedy the default.

_____    Date  4-3-02
Borrower

_____    Date  _____
Borrower


**United States
Department of
Agriculture**

**Rural Housing Service**
Centralized Servicing Center
P. O. Box 66827
St. Louis, MO  63166



CERTIFIED MAIL
RETURN RECEIPT REQUESTED

MARSHA L WILSON
1305 MOTOROLA DR
PONTIAC            IL 61764-9167

SUBJECT: NOTICE OF ACCELERATION OF YOUR RURAL HOUSING SERVICE LOAN(S);  NOTICE OF
INTENT TO FORECLOSE; AND NOTICE OF YOUR OPPORTUNITY TO HAVE A HEARING
CONCERNING THIS ACTION.

Dear  MARSHA L WILSON

PLEASE TAKE NOTE that the entire indebtedness due on the promissory note(s) and/or assumption
agreement(s) which evidence the loan(s) received by you from the United States of America, acting
through the United States Department of Agriculture Rural Housing Service (RHS), formerly Farmers
Home Administration, is now declared immediately due and payable.  If payment in full is not made,
the RHS intends to enforce its real estate mortgage(s) or deed(s) of trust given to secure the
indebtedness by foreclosure of its lien(s) on your house.

| Account Number(s) | Date of Instruments | Amount |
|---|---|---|
| 0006725236 | 07/16/97 | 70340.00 |

The recent bankruptcy proceeding filed by you has resulted in a discharge of the debt(s) owed
by you to RHS so nothing contained in this notice should be construed as an attempt by RHS to
collect or enforce the debt(s) as your personal obligation.  However, RHS is entitled to collect
the debt(s) by way of foreclosure of its lien(s) on your house.

This acceleration of your indebtedness is made in accordance with the authority granted in the
above-described instrument(s).  The reason(s) for the acceleration of your indebtedness is (are)
as follows:

   **MONETARY DEFAULT**

The balance of the account is $ 85937.96          unpaid principal and
$ 1669.60          unpaid interest, as of 07/17/03 , plus additional interest accruing at the rate
of $17.0699          per day thereafter, plus additional advances to be made by the United States
for the protection of its security, the interest accruing on any such advances, fees, or late charges,
and the amount of  subsidy to be recaptured in accordance with the Subsidy Repayment Agreement.



USDA is an Equal Opportunity Lender, Provider, and Employer.
Complaints of discrimination should be sent to: USDA, Director,
Office of Civil Rights, Washington, DC 20250-9410

*K7000015702*  L9051BSP



Unless full payment of this indebtedness is received within 30 days from the date of this letter, the United States will take action to foreclose its lien on your house and to pursue any other available remedies. Payment should be made by cashier's check, certified check, or postal money orders payable to the Rural Housing Service and mailed to the following address:

> USDA-RHS
> P. O. Box 790170
> St. Louis, MO 63179-0170

If you submit to the United States any payment insufficient to pay the account in full or insufficient to comply with any arrangements agreed to between the RHS and yourself, the payment WILL NOT CANCEL the effect of this notice. If insufficient payments are received and credited to your account, no waiver or prejudice of any rights which the United States may have will result and the RHS may proceed as though no such payments had been made.

**YOUR RIGHT TO A DISCUSSION WITH RHS** - You have the opportunity to discuss this decision to accelerate your loan(s) with a RHS official or have an administrative appeal hearing before the foreclosure takes place. This is an opportunity to discuss why you believe the United States is in error in accelerating your loan(s) and proceeding with foreclosure. If you desire to have an informal discussion with an RHS official or have any questions concerning this decision or the facts used in making this decision, you should contact this office in writing. The request for an informal discussion must be sent to the undersigned no later than   08/01/03  . Requests which are postmarked by the U. S. Postal Service on or before that date will be considered as timely received. You also have the right to an administrative appeal hearing with a hearing officer instead of, or in addition to, an informal discussion with this office. If you request an informal discussion with an RHS official, and this does not result in a decision in which you concur, you will be given a separate time frame in which to submit your request for an administrative appeal. See the attachment for your appeal rights.)

**YOUR RIGHT TO AN ADMINISTRATIVE APPEAL HEARING** - If you do not wish to have an informal discussion with an RHS official as outlined above, you may request an administrative appeal with a member of the National Appeals Division Area Supervisor, no later than 30 days after the date on which you received this notice. Requests which are postmarked by the U.S. Postal Service on or before that date will be considered as timely received as requesting an administrative appeal. Please include a copy of this letter with your request.

If you fail to comply with the requirement outlined, the United States plans to proceed with foreclosure. You may avoid foreclosure by (1) refinancing your RHS loan(s) with a private or commercial lender or otherwise paying your indebtedness in full; (2) selling the property for its fair market value and applying the proceeds to your loan(s); (3) transferring the loan(s) and property to an eligible or ineligible applicant with RHS approval; or (4) conveying the property to the Government with RHS approval. Please contact our Centralized Servicing Center office at 1-800-793-8861, if you desire to satisfy your loan(s) by one of the above methods.



You cannot be discriminated against in a credit transaction because of your race, color, religion, national origin, sex, marital status, handicap, or age (if you have the legal capacity to enter into a contract). You cannot be denied a loan because all or a part of your income is from a public assistance program. If you believe you have been discriminated against for any of these reasons, you should write to the Secretary of Agriculture, Washington, D.C. 20250.

You cannot be discriminated against in a credit transaction because you in good faith exercised your rights under the Consumer Credit Protection Act. The Federal Agency responsible for seeing this law is obeyed is the Federal Trade Commission, Washington, D.C. 20580.

For questions regarding your account, please call Risk Management toll free at 1-800-793-8861 or TDD 1-800-438-1832, 7:00 a.m. to 5:00 p.m., Monday through Friday, Central Time. Please refer to your Account number when you write or call us. Thank you.

UNITED STATES OF AMERICA
BY

H. Neil McIntyre
Branch Chief
CSC - Chief, Collection Services Branch
Rural Housing Service
United States Department of Agriculture

Date:   07/17/03
Attachment
CC:   State Office

This letter was mailed certified and regular mail on   07/17/03   .